# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY OLSON, | : | CIVIL NO. 1:CV-11-02383 |
| | : | |
| **Plaintiff** | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | |
| LACKAWANNA COUNTY | : | |
| PRISON, et al., | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Jeffrey Olson, ("Plaintiff"), a former pretrial detainee currently

incarcerated at the Federal Transfer Center in Oklahoma City, Oklahoma ("FTC-

Oklahoma City"), initiated this civil rights action on December 27, 2011, by filing a

complaint asserting violations of his rights secured by 42 U.S.C. § 1983. (Doc. 1.) In

the complaint, Plaintiff alleges that as a pretrial detainee at his former place of

detention, the Lackawanna County Prison ("LCP") in Scranton, Pennsylvania, he

received inadequate medical care and was improperly placed in general population for

five months, which he contends was a violation of his constitutional rights. Named as

Defendants are LCP,[1] Warden McMillan, and Assistant Warden Langdon.

---

[1] The law is well-settled that a prison is not a "person" that is subject to suit under §
1983. *See Ayers v. Bradford Cnty.*, Civ. No. 1:08-CV-1148, 2009 WL 801867, *5 (M.D. Pa. Mar.
25, 2009). In *Ayers*, the district court stated:

> Ayers is unable to maintain the action against BCCF [Bradford County Correctional
> Facility] because a prison or correctional facility is not a "person" that is subject to

Before the court is Defendants' motion for summary judgment.  (Doc. 42.)  For the reasons set forth below, the motion for summary judgment will be granted in part and denied in part.

## I.  **Background**

In support of their motion for summary judgment, Defendants have submitted a statement of material facts.  (Doc. 44.)  Because Plaintiff has failed to file an opposing statement of material facts as required by Middle District Local Rule 56.1, the following facts submitted by Defendants are deemed admitted unless the record demonstrates otherwise.

---

suit under federal civil rights laws.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, (1989); *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *see Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 n.3 (3d Cir. 2006) (affirming on other grounds and observing that "[t]he District Court dismissed Clarion County Jail as a defendant in this case, stating 'it is well established in the Third Circuit that a prison is not a "person" subject to suit under federal civil rights laws'"); *Kelly v. York Cnty. Prison*, No. 08-1813, 2008 WL 4601797, *2 (M.D. Pa. Oct. 15, 2008) (noting that "prison or correctional facility is not a person within the meaning of § 1983" and "the York County Prison is clearly not a person and may not be sued under § 1983").  *Jackson v. Pennsylvania*, No. 08-1297, 2008 WL 4279544, *1 (M.D. Pa. Sept. 11, 2008) (holding that a county prison is not a "person" within the meaning of § 1983); *Meyers v. Schuylkill Cnty. Prison*, No. 04-1123, 2006 WL 559467, *8 (M.D. Pa. Mar. 7, 2006) (same).  BCCF has no existence apart from the government and cannot be considered a person for purposes of maintaining a civil rights action.

*Id*.  Thus, based on this well-settled law, and despite Defendants' failure to raise this issue, summary judgment will be granted in favor of LCP.  *See* 28 U.S.C. § 1915(e)(2).

A.    **Facts**

The allegations in Plaintiff's complaint relate to his incarceration in LCP from February 24, 2011, to May 5, 2012, as a pretrial detainee facing federal fraud charges. (Doc. 44 ¶ 2.) Prior to his incarceration, Plaintiff was involved in a motor vehicle accident on April 13, 2010, during which he sustained injuries to his left leg and heart. (Doc. 44 ¶ 3; Doc. 1 at 3.) When Plaintiff was arrested on February 24, 2011, he was taken to LCP, and underwent an intake medical evaluation upon arrival. (Doc. 44 ¶ 4; Doc. 46, Correctional Care, Inc. Medical Intake Screening Form.) The intake medical evaluation was performed by Correctional Care, Inc. ("CCI"), the independent contractor hired by LCP for the medical treatment of inmates. (Doc. 44 ¶ 5.) As part of its evaluation and treatment, CCI obtained Plaintiff's medical records. (*Id*. ¶ 6; Docs. 50 & 51.) Those medical records revealed that Plaintiff underwent surgery on his left leg and had a cardiac procedure on his heart after the April, 2010, accident. (Doc. 50 at 41, 44, Physicians' Notes.)

During Plaintiff's incarceration from February 24, 2011 to May 5, 2012, Plaintiff was seen and evaluated by the CCI physician, nurse, and other medical personnel in the dispensary several times per week. (Doc. 44 ¶ 7; Doc. 47, Notes of Medical Treatment.) Plaintiff was prescribed generic forms of several medications that he was taking prior to his incarceration. (Doc. 44 ¶ 8; Doc. 49 at 28-29, Olson

Dep., 1/15/2013.) Plaintiff was also sent for outside medical consultations for his orthopedic problems, either upon his own request or referral by the CCI physician. (Doc. 44 ¶ 10; Doc. 48, Notes of Medical Treatment.)

After Plaintiff was released from LCP, on May 17, 2012, Plaintiff underwent another surgery on his left leg, performed by Dr. Daniel Horowitz. (Doc. 44 ¶ 11; Doc. 49 at 33-34.) At his deposition taken for this action, Plaintiff asserted that Dr. Horowitz expressed no criticism of the care Plaintiff had received for his leg at LCP. (Doc. 44 ¶ 11; Doc. 49 at 34-35.)

With respect to Plaintiff's allegations relating to his conditions of confinement, it is undisputed that Plaintiff asserted complaints about his transfer from LCP's medical unit to LCP's general population for five months. (Doc. 44 ¶ 12.) In his complaint, Plaintiff asserts that, when he was transferred to LCP's general population, his crutches were taken away and he was left to walk on his broken leg. (Doc. 1 at 3.) He states, "I am basically confined to my cell without crutches. When necessary I hobble out for my food trays or to use the phone or shower while suffering intense pain." (*Id*. at 4.) Further, in his deposition, Plaintiff stated that, without crutches, he "could barely walk, [had] no balance, [and was in] extreme pain." (Doc. 48 at 36.) He also claimed that he lost fifty pounds because he would not leave his cell, and could not travel up and down stairs. (*Id*. at 38.) However, Plaintiff admitted that he

was neither assaulted nor attacked while in general population, and suffered no injuries during his five-month placement therein. (*Id*. at 37.)

### B.    Procedural History

Plaintiff filed his complaint on December 27, 2011. (Doc. 1.) By order dated January 17, 2011, the court directed service of the complaint on the Defendants named therein. (Doc. 11.) Defendants filed an answer and counterclaim on February 3, 2012. (Doc. 16.) Thereafter, the court issued a case management order setting deadlines for discovery and dispositive deadlines. (Doc. 21.) After the court granted several extensions of those deadlines, (*see* Docs. 26, 28, 30, 39), Defendants filed the instant motion for summary judgment on February 25, 2013. (Doc. 42.) Plaintiff has filed a brief in opposition. (Doc. 58.) Thus, the motion for summary judgment (Doc. 42) is ripe for disposition.

### II.    Standard of Review

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for granting a motion for summary judgment. Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A

factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005), *cert. denied*, 546 U.S. 1094 (2006).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment

should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   Discussion

Plaintiff asserts claims under 42 U.S.C. § 1983 for (1) inadequate medical care, and (2) unconstitutional conditions of confinement. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Therefore, to succeed on his claims, Plaintiff must establish two elements: (1) that a person deprived him or caused him to be deprived of a right secured by the Constitution or law of the United States; and (2) that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42. 48 (1988). Since Defendants do not dispute that they were acting under color of

state law, the only issue for the court to decide is whether they caused Plaintiff to suffer deprivations of a constitutional magnitude. In this regard, Defendants argue that summary judgment should be granted in their favor because: (1) Plaintiff has failed to demonstrate that Defendants were deliberately indifferent to his serious medical needs; and (2) Plaintiff has failed to establish a constitutional violation in connection with his placement in general population. The court will discuss both arguments in turn.

### A.   Inadequate Medical Care

Plaintiff claims that Defendants provided him with inadequate medical care for the injuries to his leg and heart while he was a pretrial detainee at LCP. Since Plaintiff was a pretrial detainee at the relevant time, the Fourteenth Amendment's Due Process Clause governs his claim for inadequate medical care, as opposed to the Eighth Amendment, which applies to convicted persons. *Bell v. Wolfish*, 441 U.S. 520, 535-57 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). The Due Process Clause prohibits "punishment" of a pretrial detainee prior to an adjudication of guilt in accordance with due process law. *Bell*, 441 U.S. at 535-37; *Hubbard*, 399 F.3d at 164-65. Courts assess inadequate medical care claims under the familiar "deliberate indifference" test set forth in *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976), and more

8

commonly applied in the Eighth Amendment context.[2] *Brown v. Deparlos*, 492 F. App'x 211, 214-15 (3d Cir. 2012) (citing the *Estelle* standard and *Natale*, 318 F.3d at 581); *Hubbard*, 399 F.3d at 166 & n.22 (citing the *Estelle* standard). Under this standard, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582 (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Here, Plaintiff has established that he sustained injuries to his left leg and heart as a result of the April 13, 2010 motor vehicle accident and that those injuries continued to require medical care once he was incarcerated in February, 2011. In the instant motion, Defendants do not dispute that Plaintiff has serious injuries. The question for the court, then, is whether Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

The test for "deliberate indifference" is "subjective recklessness" as that concept is understood in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994); *Natale*, 318 F.3d at 582. This standard requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must be both

---

[2] The court is mindful of the Third Circuit's holding in *Montgomery v. Ray*, 145 F. App'x 738 (3d Cir. 2005), in which the Court found that the Eighth Amendment "only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees." *Id.* at 740. Specifically, this court must also consider "whether the conditions of confinement [and inadequate medical care] . . . amounted to punishment prior to an adjudication of guilt." *Id.* (citing *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d. Cir. 2005)).

9

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Natale*, 318 F.3d at 582. The Third Circuit has found "deliberate indifference" in a variety of circumstances, including where: (1) "there was objective evidence that a plaintiff had a serious need for medical care, and prison officials ignored that evidence"; and (2) "where necessary medical treatment is delayed for non-medical reasons." *Natale*, 318 F.3d at 582 (internal citations, quotations, and brackets omitted).

In their motion, Defendants argue that, because the record shows that Plaintiff was being evaluated and treated properly on a regular basis by the employees of LCP's healthcare provider, CCI, none of whom are Defendants in this action, there is no factual basis for Plaintiff's assertion of a constitutional violation by Defendants. Indeed, the Third Circuit has recognized a distinction between correctional officer defendants and health care defendants in the context of claims involving indifference to an inmate's health care concerns. *See, e.g., Donnell v. Corr. Health Servs., Inc.*, 405 F. App'x 617, 622 (3d Cir. 2010). In *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), the Third Circuit Court sustained the dismissal of correctional officer defendants but reversed a dismissal of health care defendants with respect to claims

10

asserting that both types of defendants had been deliberately indifferent to the

inmate's medical needs. The Court explained:

> If a prisoner is under the care of medical experts . . . , a non-medical
> prison official will generally be justified in believing that the prisoner is
> in capable hands. This follows naturally from the division of labor
> within a prison. Inmate health and safety is promoted by dividing
> responsibility for various aspects of inmate life among guards,
> administrators, physicians, and so on. Holding a non-medical prison
> official liable in a case where a prisoner was under a physician's care
> would strain this division of labor. Moreover, under such a regime, non-
> medical officials could even have a perverse incentive *not* to delegate
> treatment responsibility to the very physicians most likely to be able to
> help prisoners, for fear of vicarious liability.

*Spruill*, 372 F.3d at 236 (emphasis in original). In *Donnell*, the Third Circuit reasoned

that, "[w]here, as here, the record suggests that the prison delegated to a private

company the responsibility of conducting medical assessments of newly-admitted

inmates, it may be that corrections defendants could not have the requisite culpable

state of mind, while the health care professionals could be found liable." *Donnell*, 405

F. App'x at 623.

In this case, Defendants are LCP, LCP's Warden, and LCP's Associate Warden.

None of these Defendants are medical personnel who were treating Plaintiff at the

relevant time period. Further, the record shows that LCP had contracted with CCI, an

independent contractor, for medical services for LCP inmates. (Doc. 44 ¶ 5.) The

Third Circuit has made clear that a non-physician defendant cannot be held liable for

11

being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care provider. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Accordingly, Plaintiff has failed to establish his claim for inadequate medical care against the named Defendants. Thus, summary judgment will be granted here in favor of Defendants.

### B.    Conditions of Confinement - Placement in General Population

In his complaint, Plaintiff also alleges that his constitutional rights were violated when he was placed in general population at LCP for five months, despite the medical problems he was having with his leg and heart that required him to remain in LCP's medical unit. In their motion for summary judgment, Defendants argue that Plaintiff has failed to assert a constitutional violation under § 1983. Upon review, the court will deny Defendants' motion for summary judgment and allow this claim to proceed.

A pretrial detainee's challenge to the conditions of his confinement is, as noted above, brought under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). Under the Due Process Clause, "the proper inquiry is whether the [challenged] conditions amount to punishment of the detainee." *Id*. at 535. "Thus, sentenced prisoners are protected from only punishment that is 'cruel and unusual,' while

pretrial detainees are protected from any punishment." *Burton v. Kindle*, 401 F.

App'x 635, 637 (3d Cir. 2010) (quoting *Hubbard v. Taylor*, 399 F.3d 150, 166-67 (3d

Cir. 2005). "In order to determine whether the challenged conditions of pre-trial

confinement amount to punishment, '[a] court must decide whether the disability is

imposed for the purpose of punishment or whether it is but an incident of some other

legitimate government purpose.'" *Hubbard*, 399 F.3d at 158 (quoting *Bell*, 441 U.S.

at 538-39).

In *Paith v. Cnty. of Washington*, 394 F. App'x 858 (3d Cir. 2010), the Third

Circuit explained that "*Bell* requires application of a two part test. '[the court] must

ask, first, whether any legitimate purposes are served by these conditions, and second,

whether these conditions are rationally related to these purposes.'" *Paith*, 394 F.

App'x at 861 (quoting *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d

Cir. 1983)). Other Third Circuit decisions establish that the protections provided a

pretrial detainee in a conditions of confinement case "are at least as broad, if not

broader," than those provided a convicted prisoner under the Eighth Amendment,

*Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010) (citing *Fuentes v. Wagner*, 206

F.3d 335, 344 (3d Cir. 2000)), and that negligent conduct on the part of a prison

official cannot give rise to a § 1983 conditions of confinement claim brought by a

pretrial detainee, *Burton*, 401 F. App'x at 637 (citing *Cnty. of Sacramento v. Lewis*,

13

523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

In *Paith*, the Third Circuit applied the Fourteenth Amendment *Bell* standard to a case wherein a pretrial detainee was confined in the facility's "green room," which was used for people coming down from drugs, violent people, or people on suicide watch. *Paith*, 394 F. App'x at 861. The *Paith* Court concluded that, in spite of the sparse conditions of the green room, the conditions did not constitute punishment in violation of the Fourteenth Amendment. In reaching its conclusion, the court indicated its consideration of the following circumstances:

> [The plaintiff] was placed in the green room as a protective measure after she exhibited self-destructive behavior. Although the record fails to establish with certainty the duration of her confinement in the green room, it appears to be less than a day as she was placed in the room after 9 p.m. and was returned to general housing the next day following evaluation by the prison psychiatrist who prescribed medications to address her mental impairments.

*Id*. *Paith* demonstrates that, although it is generally true that an inmate does not have a constitutional right to a certain classification or custody level in prison or a right to

confinement in a particular prison, facility, or program,[3] circumstances may take a given case out of the norm.

In support of their motion for summary judgment, Defendants have presented no evidence supporting the decision to transfer Plaintiff to general population despite his medical condition.  While Defendants do not contest that Plaintiff made numerous complaints about his housing classification in general population, they make no showing that his complaints were considered or even heard. Rather, Defendants simply argue that because Plaintiff was not attacked or assaulted by any fellow inmates in general population, he has failed to state a claim.  This argument, however, ignores Plaintiff's assertions with respect to other conditions to which he was subjected while in general population, such as the denial of access to his crutches. Again, Plaintiff asserts that without his crutches, he was unable to travel up and down stairs, access the showers,[4] and experienced difficulty in retrieving his food tray in his

---

[3] In *Cobb v. Atych*, 643 F.2d 946, the Third Circuit noted that pretrial detainees have federally protected liberty interests "that are different in kind from those of sentenced inmates."  643 F.2d at 957.  Explaining that "[p]retrial detainees are restricted only as a means to ensure their eventual presence at trial and sentencing, . . . they retain several constitutionally protected liberty interests relevant to the conditions of their confinement that are not fully available to sentenced inmates." *Id*. (citations omitted).  These include the right to effective assistance of counsel which may be hindered by transfers to other facilities. *Id*.

[4] In *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998), the Ninth Circuit Court of Appeals reversed the district court's entry of summary judgment as to the issue of whether an inmate with a broken leg had an Eighth Amendment right to shower in a handicapped-accessible facility.

cell.  Further, without the crutches, Plaintiff asserts, he suffered great pain and

significant weight loss.  In their motion, Defendants do not address these conditions,

let alone *Bell*'s two-part test, "first, whether any legitimate purposes are served by

these conditions, and second, whether these conditions are rationally related to these

purposes."  *Paith*, 394 F. App'x at 861 (quoting *DiBuono*, 713 F.2d at 992).  Without

such a showing, or even an argument to that effect, the court cannot conclude that

there exists no genuine issue of material fact regarding the condition of Plaintiff's

confinement.[5]  As such, Defendants' motion for summary judgment on this claim will

be denied.

---

*Id*.  The Court explained as follows:

> [A]lthough we recognize the wisdom of deferring to prison officials' considered
> judgment regarding the proper way to administer a prison, *Procunier v. Martinez*, 416
> U.S. 396, 405 (1974), Defendants are not excused from taking reasonable measures to
> assist Frost in showering safely.  Frost suggests a variety of options that he alleges
> would have met his safety needs.  For example, he contends that he would have been
> aided by a chair in the shower, a handicapped bar, or the provision of extra guards to
> assist him.  The fact that such basic steps could have better guaranteed Frost's safety
> provides evidence that Defendants were deliberately indifferent in failing to provide
> any accommodation whatsoever.

*Frost*, 152 F.3d at 1129.  The Court ultimately concluded that a triable issue of fact existed with
regard to whether the failure to provide Frost with adequate shower facilities resulted in the violation
of his constitutional rights.  *Id*.

[5]  Although there may be a question as to the personal involvement of these Defendants
Warden McMillan and AW Langdon, Defendants do not raise this issue.  Therefore, the court will
proceed on the basis that Defendants concede the issue of personal involvement for purposes of the
instant motion.

**IV.    Conclusion**

For the reasons set forth herein, the motion for summary judgment will be granted as to Defendant LCP.  Further, the motion for summary judgment will be granted with respect to Plaintiff's claim of inadequate medical care.  The motion for summary judgment will be denied with respect to Plaintiff's conditions of confinement claim against Defendants Warden McMillan and AW Langdon and the matter will proceed to trial on that issue only.

An appropriate order follows.


                                             s/Sylvia H. Rambo
                                        United States District Judge

Dated:  June 24, 2013.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY OLSON,** | : | **CIVIL NO. 1:CV-11-02383** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **LACKAWANNA COUNTY** | : | |
| **PRISON**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

For the reasons set forth in the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) The motion for summary judgment (Doc. 42) is **GRANTED** in part

and **DENIED** in part as follows:

   a) The motion for summary judgment (Doc. 42) is **GRANTED** in

favor of  Defendant Lackawanna County Prison and against Plaintiff.

   b)  The motion for summary judgment (Doc. 42) is **GRANTED** in

favor of Defendants Warden McMillan and AW Langdon and against

Plaintiff with respect to Plaintiff's claim of inadequate medical care.

c) The Clerk of Court shall defer the entry of the grant of summary judgment above until the conclusion of this case.

d) The motion for summary judgment (Doc. 42) is **DENIED** with respect to Plaintiff's conditions of confinement claim against Defendants Warden McMillan and A.W. Langdon.

2) Trial will commence with the drawing of a jury on Monday, September 30, 2013 at 10:00 a.m. in Courtroom No. 3, Eighth Floor, Federal Building, Third and Walnut Streets, Harrisburg, Pennsylvania.

3) A pretrial conference will be held prior to jury selection at 9:00 a.m. on Monday, September 30, 2013 in Courtroom No. 3.

4) No later than August 19, 2013, the parties shall file pretrial memoranda in accordance with the local rules of this court. In addition, the parties shall file by that date proposed *voir dire* and proposed jury instructions. Plaintiff shall also file *in camera*[6] with the court an addendum to the pretrial memoranda indicating **(a) the name of the proposed witness, (b) the prisoner number and present location, or, if the proposed witness is not a prisoner, whether that proposed**

---

[6]Plaintiff is to note that "*in camera*" refers to the fact that the court will not disclose his proposed witnesses' testimony.

**witness is a government (i.e. Department of Corrections or Bureau of Prisons) employee, (c) their current address, and (d) the substance of the testimony for each proposed witness.** Plaintiff shall indicate for which proposed witnesses he is seeking subpoenas. **Failure to timely file pretrial memoranda or the required addendum may result in sanctions, including dismissal**.

       5) Motions *in limine* (if any) and supporting briefs may be filed no later than July 8, 2013. Responsive briefs are due no later than July 18, 2013. Reply briefs are due by July 25, 2013.

       6) The Clerk of Court is directed to send to the parties a copy of this court's "Pretrial Memorandum" form.

       7) If the parties file trial memoranda, they must be filed five (5) business days before trial.

       8) Whenever any civil action scheduled for jury trial is settled or otherwise disposed of in advance of trial, jurors' costs, including mileage and per diem, shall be assessed equally against the parties unless the Clerk's Office at the place the trial is to be held is notified of the settlement in sufficient time to permit the Clerk to advise the jurors that their attendance will not be necessary. Notice to such Clerk's

Office before 5:00 p.m. on the last business day preceding the day on which the trial

of the action is to start shall be adequate for such purpose.

                                                   s/Sylvia H. Rambo
                                                  United States District Judge

Dated:  June 24, 2013.